UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENNIS WURST,<br><br>   Plaintiff,<br><br>  v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>   Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 04-2995 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

Walter T. Wolf, Esq.
41 Grove Street
Haddonfield, NJ 08033
   Counsel for Plaintiff

WINDELS MARX LANE & MITTENDORF, LLP
By: Charles M. Fisher, Esq.
  Jennifer Barna, Esq.
104 Carnegie Center, Suite 201
Princeton, NJ 08540
   Counsel for Defendant

**IRENAS**, Senior District Judge:

This is a diversity suit brought by Plaintiff Dennis Wurst ("Wurst") against his homeowners insurance company, State Farm Fire and Casualty Insurance Company ("State Farm"). Wurst asserts a breach of contract claim against State Farm for denying him coverage under his insurance policy.[1] State Farm moves for summary judgment.[2]

---

[1] Wurst's claims of bad faith and violation of the New Jersey Consumer Fraud Act were voluntarily dismissed at an earlier stage of this litigation.

[2] We have subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## I.

On February 23, 2003, during a heavy rain,[3] the basement wall of Wurst's home collapsed, allowing massive amounts of water and mud to rush in.  Thereafter, Wurst made a claim for the loss under his State Farm homeowners policy (the "policy").  State Farm conducted an investigation and denied Wurst's claim, explaining that it had determined the collapse was caused by "soil conditions and hydrostatic pressure, which are losses excluded under the policy."  (Cronin Cert. Ex. 3)

The parties agree that the relevant provisions of the policy are:

SECTION I. ADDITIONAL COVERAGES

. . .

**Collapse.**  We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. . . .

The collapse must be directly and immediately caused only by one or more of the following:

    . . .

    b.   hidden decay of a supporting or weight-bearing structural member of the building;

    . . .

Loss to . . . foundation is not included under

---

[3]  It was raining at the time the wall collapsed but there was also snow on the ground.

2

```
item[] b. . . . unless the loss is the direct and
immediate cause of the collapse of the building.

. . .
SECTION I - LOSSES NOT INSURED

1.   We do not insure for any loss to the property
     described in Coverage A which consists of, or
     is directly and immediately caused by, one or
     more of the perils listed in items a. through
     n. below, regardless of whether the loss occurs
     suddenly or gradually, involves isolated or
     widespread damage, arises from natural or
     external forces, or occurs as a result of any
     combination of these:

a.   collapse, except as specifically provided in
     SECTION 1-ADDITIONAL COVERAGES, Collapse;

. . .

c.   freezing, thawing, pressure or weight of water
     or ice . . . to a . . . foundation . . .;

. . .

2.   We do not insure under any coverage for any
     loss which would not have occurred in the
     absence of one or more of the following
     excluded events.  We do not insure for such
     loss regardless of: (a) the cause of the
     excluded event; or (b) other causes of the
     loss; or (c) whether other causes acted
     concurrently or in any sequence with the
     excluded event to produce the loss; or (d)
     whether the event occurs suddenly or gradually,
     involves isolated or widespread damage, arises
     from natural or external forces, or occurs as a
     result of any combination of these:

. . .
```

c.   **Water Damage**, meaning

```
. . .

(3)  water below the surface of the ground,
     including water which exerts pressure on, or
```

seeps or leaks through a . . . foundation.
(Compl. Ex. A)(bold typeface in original)

Wurst asserts that he is entitled to coverage under the "hidden decay" provision of his policy.  His expert witness, John Hare,[4] opines that several factors caused the basement wall to collapse:

- "the foundation wall collapsed due to the expansion of ice [in the ground] causing excessive pressure on the wall at the same time of the snow impact, resulting in its collapse."  (Fisher Cert. Ex. 9 (Hare Report of 7/20/04));

- "the cause of the wall collapse was the surcharge load of the 5 to 6 foot snowdrift along with the additional surcharge load, plus impact land [sic], of the wet snow from the roof.  This combined with the frozen soil that as it thawed, would exert expansion forces on the foundation wall.  All these forces combined to create a pressure on the wall beyond which the wall was designed to retain."  (Fisher Cert. Ex. 10 (Hare Report of 5/18/05));[5]

- "the foundation failure was caused by decay of the mortar bond due to deterioration of the cinder aggregated masonry causing tension bond failure.  Once this occurs, the cracks will continue to widen and could lead to an eventual collapse.  This was the direct cause of the catastrophic collapse when the condition wall was overstressed during the significant severe weather events that occurred on February 22, 2003, just prior to and during the time of collapse."  (Fisher Cert. Ex. 11 (Hare Report of 6/20/05))

Mr. Hare testified that all of these factors contributed to the basement wall collapsing.  (Hare Dep. 196:9-25) Specifically,

---

[4]  Mr. Hare is licensed by the State of New Jersey as an architect, engineer, and building inspector.

[5]  Wurst concedes that he has no claim under the policy based on the snow collecting on or falling off of the roof.

he testified that the "decay of the mortar bond due to deterioration of the cinder aggregate masonry" was "a contributing factor . . . that wasn't the only cause. . . . other problems also evolved, but [the decay] was a contributing cause." (Id.)

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the

nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*). "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(e) (A party opposing summary judgment cannot rest upon the "mere allegations or denials of the adverse party's pleading" but must respond with affidavits or depositions setting forth "specific facts showing that there is a genuine issue for trial.").


## III.

State Farm asserts that Wurst's claim is not covered by the "hidden decay" clause of the policy and in any event, his claim is expressly excluded by the policy.  We will address each argument separately, as Wurst bears the burden of persuasion at trial with respect to the first issue but not the second.[6]

---

[6] *Hartford Accident & Indem. Co. v. Aetna Life & Casualty Ins. Co.*, 98 N.J. 18, 26 (1984)(insurer bears the burden of proving that an incident falls within an exclusionary provision of a policy; insured bears the burden of

**A.**

        To prevail on his claim, Wurst has the burden of
establishing that the collapse of his basement wall is covered
under his homeowners' policy.  Therefore, according to the terms
of his policy, he must establish that the collapse was "directly
and immediately caused *only by* . . . *hidden* decay" of the
basement wall.  (Compl. Ex. A; emphasis added)  State Farm
asserts that Wurst has not put forth any evidence that the decay
was the only cause of the collapse, or the decay was hidden.
Indeed, State Farm asserts that Wurst's own evidence establishes
that several factors caused the collapse and the decay of the
basement wall was visible.  We agree with State Farm that Wurst
has failed to carry his summary judgment burden on both points.

        First, the undisputed evidence, put forth by Wurst himself,
demonstrates that the "decay of the mortar bond due to
deterioration of the cinder aggregate masonry" was "a
*contributing factor* . . . that *wasn't the only cause*" of the
collapse.  (Hare Dep. 196:9-25)(emphasis added)  The policy
provides for coverage when a collapse is caused *only* by hidden

proving coverage under a policy); *see generally* 17 Couch on Insurance
§ 254:11-12 ("the insured bears the burden of proving all elements of a prima
facie case including the existence of a policy, payment of applicable
premiums, compliance with policy conditions, the loss as within policy
coverage, and the insurer's refusal to make payment when required to do so by
the terms of the policy. . . . The insurer bears the burden of proving the
applicability of policy exclusions and limitations or other types of
affirmative defenses, in order to avoid an adverse judgment after the insured
has sustained its burden and made its prima facie case.").

decay.  Here, the record demonstrates that decay was not the only cause of the collapse, therefore Wurst's loss is not covered by the policy.

Second, even if there were an actual dispute about whether decay was the only cause of the collapse, summary judgment would still be warranted because Wurst has put forth no evidence that the decay was "hidden."[7]  Wurst attempts to create a factual dispute by pointing to carefully selected excerpts of Mr. Hare's testimony that the decay was not visible in photographs. However, the testimony, even when read in the light most favorable to Wurst, does not suffice to support a prima facie claim that the decay in Wurst's basement was hidden:

> Q.   Lets talk about the Wurst basement.  Did you notice cracking in the walls?
>
> A.   Yes.
>
> Q:   What types of cracks?
>
> A:   Well, there are horizontal cracks except at the corners where they become step cracks.
>
>       . . .

---

[7]  "Hidden decay" is not defined by the policy.  Both parties' arguments implicitly define "hidden" as "not visible," a definition which comports with the ordinary meaning of the word.  *See* Webster's Third New International Dictionary (defining "hidden" as "being out of sight or off the beaten track: concealed").  Accordingly, we will use the ordinary meaning of the word.  *See, e.g., Andrew-Riverside Presbyterian Church v. Guide-One Mut. Ins. Co.*, No. A04-1533, 2005 Minn. App. LEXIS 436 at *8-9 (Minn. Ct. App. April 26, 2005) (using ordinary meaning to define "hidden decay" language of insurance policy as decay that is "out of sight" or "concealed"); *Olde Colonial Village Condo. Council v. Millers Mut. Ins. Co.*, No. 99C-06-187, 2002 Del. Super. LEXIS 42 at *24-25 (Del. Super. Ct. January 28, 2002)(undefined "hidden decay" provision of insurance policy interpreted to mean "'out of sight or concealed'").

Q:   And you said there's visible evidence of
     [decay] in the form of salt deposits?

A:   Well, there are salt deposits that are
     caused by moisture coming through the
     block. . . . It dissolves salts that are
     in the block . . . . the water
     evaporates and leaves these dissolved
     minerals and salts on the face of the
     block. . . . And you know, there's quite
     a bit of it down there in the basement
     in certain areas.

Q:   Do you have photographs of that?

A:   I don't know that you could see them in
     the photographs. . . . I couldn't tell
     you specifically from the photographs
     that that's what it was. . . . Because
     they're not close up enough.

          . . .

Q:   What did you see that led you to . . .
     reach [the] conclusion [that the blocks
     of the basement wall decayed]?

A:   . . . The surface of the block itself
     and the surface [of] . . . the mortar
     itself . . .

Q:   Do you mean the cracks?

A:   Yeah.

Q:   The cracks?

A:   Right . . . when the bond breaks it
     pulls pieces of the block away.

(Hare Dep. 128:25-129:20; 134:25-10)  Additionally, Wurst's

girlfriend testified that she saw cracks in the house foundation

while gardening around the house.  (Fisher Cert. Ex. 7 (St.

9

Petery Dep. 13:4-10))

This testimony does not raise a triable issue of fact as to whether the decay was hidden.  In the absence of any evidence to support Wurst's assertion that the decay was hidden, there is no material dispute of fact in the record and summary judgment is warranted.


**B.**

Alternatively, even if we assume *arguendo* that Wurst has carried his summary judgment burden with respect to coverage under the policy, summary judgment is appropriate because State Farm has established that the basement wall collapse was specifically excluded from coverage.

First, all collapses not caused solely by hidden decay (or by several other conditions not relevant here) are excluded from coverage under the policy.  As discussed above, the undisputed record establishes that decay was not the only cause of the collapse and the decay was visible, not hidden-- cracks and salt deposits were observed on the face of the foundation blocks. Thus, the collapse does not fall within the "Additional Coverages" Section of the policy and is therefore excluded.

Second, the conditions which, Plaintiff's expert, Mr. Hare concludes caused the collapse are excluded from the policy.  Mr. Hare's reports state that "snow impact" and "snow load on the

ground;" and "expansion of ice" and thawing in the ground caused
"excessive pressure" and "expansion forces on the foundation
wall" which resulted in the wall's collapse. (Fisher Cert. Ex. 9
(Hare Report of 7/20/04); Fisher Cert. Ex. 10 (Hare Report of
5/18/05))  These conditions are excluded under the policy's
exclusion of losses caused by "freezing, thawing, pressure or
weight of water or ice . . . to a  . . . foundation," (Section
I., 1., c.)  and "water damage" which is defined as "water below
the surface of the ground, including water which exerts pressure
on, or seeps or leaks through a . . . foundation," "regardless of
. . . (c) whether other causes acted concurrently or in any
sequence with the excluded event to produce the loss," (Section
I., 2., c., (3)).  Thus, the possibility that other conditions,
namely decay and snow load, also contributed to the loss does not
preclude application of the policy's exclusions.

    Accordingly, we hold that the policy excludes coverage for
Wurst's loss and summary judgment for State Farm is appropriate.


                              **IV.**

    For the foregoing reasons, the Court will grant summary
judgment to State Farm.  An appropriate order will be issued.


Dated: May __24__, 2006

                              s/*Joseph E. Irenas*
                              **Joseph E. Irenas, S.U.S.D.J.**

                              11